**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2796-23

UGINEY U. MARCELLE
WILLIAM (a/k/a UGINEY U.
MARCELLE) and NYOS A.
WILLIAM, individually and
on behalf of all others similarly
situated,

     Plaintiffs-Appellants,

v.

BRICK CITY MOTORS, INC.,

     Defendant-Respondent.

_____

Submitted January 29, 2025 – Decided March 10, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6014-23.

Perlman-DePetris Consumer Law and Lewis G. Adler, attorneys for appellants (Paul N. DePetris, of counsel and on the brief; Lee M. Perlman and Lewis G. Adler, on the briefs).

Fox Rothschild LLP, attorneys for respondent (Timothy J. Broking, of counsel and on the brief; Jenna M. Leanza, on the brief).

PER CURIAM

Plaintiff Uginey U. Marcelle William appeals from the May 3, 2024 Law Division order compelling arbitration and dismissing without prejudice plaintiff's complaint against defendant Brick City Motors, Inc. We affirm in part and reverse in part.

I.

In October 2022, plaintiff purchased a used car from defendant. The retail installment contract (RISC) contained an arbitration agreement permitting either party to elect to arbitrate any claim or dispute "arising out of or in any way related to" the contract. The RISC arbitration agreement permitted the party electing arbitration to choose to arbitrate under the rules and procedures of either the Judicial Arbitration and Mediation Services, Inc. (JAMS) or American Arbitration Association (AAA), after providing the other party written notice of the dispute and a reasonable opportunity to respond.

The purchase order (PO) for the vehicle contained a similar but not identical arbitration agreement permitting either party to elect to arbitrate any claim or dispute that arose "in contract, tort or otherwise." The PO arbitration

2

agreement permitted plaintiff to choose the applicable rules of either the AAA or the National Arbitration Forum.

Both the RISC and PO arbitration agreements allocated fee and payment responsibilities, albeit differently,[1] contained a class action waiver, and provided the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, governed.

Plaintiff encountered issues with the vehicle two days after taking possession of it, when the check engine light turned on. Over the course of the next two weeks, the check engine light turned on twice again. Each time, plaintiff brought the car back to defendant. The third time, plaintiff told defendant he wanted a refund or a replacement vehicle, but the parties were unable to come to an agreement.

On August 6, 2023, plaintiff filed an arbitration demand, notice to produce and interrogatories with the AAA, along with the arbitration filing fee. The demand, which referenced the RISC arbitration agreement, claimed violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -229, New Jersey Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -

---

[1] The RISC arbitration agreement provided defendant would consider any good faith request by plaintiff to pay the arbitrator's fees. The PO arbitration agreement required plaintiff to pay half of the arbitration filing fee if he demanded arbitration first, and defendant to pay the remainder.

18, breach of contract, violation of the covenant of good faith and fair dealing, promissory estoppel, and lender liability as a holder in due course; and sought damages, common law and statutory remedies, attorneys' fees and refunds and cancellation of debts or contracts, among other relief.

Defendant did not respond to plaintiff's demand. In a September 13, 2023 letter, the AAA notified plaintiff's counsel and defendant it could not arbitrate the dispute because

> [p]rior to the filing of this arbitration [defendant] failed to comply with the AAA's policies regarding consumer claims, set forth in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration . . . . Accordingly, we must decline to administer this claim and any other claims between [defendant] and its consumers at this time. . . . According to R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

The advisement did not specify the provisions with which defendant failed to comply, but addressed how defendant could remedy the deficiencies:

> If [defendant] advises the AAA in the future of its intention to comply with the AAA's Consumer Rules and Protocol and, if applicable, resolves any outstanding payment obligations, the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward. Therefore, if [defendant] wishes for the AAA to consider accepting consumer disputes going forward, [defendant] must, at

4

a minimum, register its clause on the Consumer Clause Registry on our website[] . . . . Upon completion of the registration process and confirmation from the AAA that [defendant] is now active on the Consumer Clause Registry, [defendant] is responsible for informing all parties that Claimant may re-file their claim.

Defendant did not challenge the AAA's ruling. Two days later, plaintiff filed a putative class action complaint in the Law Division, largely identical to his arbitration demand. Relying on the PO arbitration agreement, defendant moved to dismiss the complaint and compel arbitration, which plaintiff opposed.

At the May 2, 2024 oral argument on the motion, defense counsel represented he was unaware whether defendant had "resolved any outstanding issues[2] with the AAA," but sought "an opportunity . . . to cure [any] administrative deficiency and for the matter to go before arbitration." Plaintiff argued defendant breached the arbitration agreement by failing to cure the deficiencies with the AAA and therefore he should be permitted to proceed with the complaint.

The trial court granted defendant's motion and dismissed plaintiff's complaint without prejudice. The court agreed in part with both parties. In its oral decision, the court found plaintiff, not defendant, waived his right to

---

2   It is unclear from the record whether defendant's deficiencies were administrative, financial or both.

A-2796-23

challenge the arbitration provision because plaintiff's filing for arbitration acknowledged the enforceability of the agreement. However, the court noted defendant's "argument that it's simply an administrative roadblock or a deficiency or impediment is not compelling . . . . It really is a problem."

Relying on New Jersey's established preference for enforcing arbitration agreements, the court enforced the parties' arbitration agreement, conditioned on defendant's curing any deficiency with the AAA within fourteen days.[3]

## II.

"We apply a de novo standard of review when determining the enforceability of contracts, including arbitration agreements." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). "We review de novo the trial court's judgment dismissing the complaint and compelling arbitration." Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020).

"[T]he validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024).

---

[3] According to a May 17, 2024 certification of defendant's general manager, Hiram Ortiz, he was unaware of any deficiency with the AAA and had no record of receiving the AAA's September 13, 2023 letter. Ortiz certified he made numerous attempts to determine what deficiencies existed and was willing to cure them. Ortiz also offered to forward any fees, but according to his records, the fees had been paid and the company was registered with the AAA.

A-2796-23

"We owe no special deference to the trial court's interpretation of an arbitration provision, which we view 'with fresh eyes.'" Ibid. (quoting Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)). Our Supreme Court held that "[i]n reviewing such orders, [a reviewing court is] mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013).

"The issue of whether a party waived its arbitration right is a legal determination subject to de novo review." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 275 (2013). "Nonetheless, the factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error." Ibid.

On appeal, plaintiff argues the trial court's decision should be reversed because defendant materially breached the arbitration agreement, thereby relieving plaintiff of his obligations under the agreement. Plaintiff contends the breach was material because defendant (1) failed to keep an arbitration forum available, (2) did not inform plaintiff the forum was not available in advance, and (3) did not respond to the arbitration demand or contest the AAA's "ruling," advance filing fees, or file for arbitration.

7                                                        A-2796-23

Whether a party materially breached an arbitration agreement by failing to respond or pay fees "must be made on a case-by-case basis after considering the agreement's terms and the conduct of the parties." Cerciello v. Salerno Duane, Inc., 473 N.J. Super. 249, 258 (App. Div.) (quoting Roach v. BM Motoring, LLC, 228 N.J. 163, 181 (2007)), leave to appeal denied by 252 N.J. 184 (2022).

A material breach "goes to the essence of the contract." Roach, 228 N.J. at 174 (quoting Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961)). To determine material breach, the Court adopted the factors proposed by the Restatement (Second) of Contracts:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

[Id. at 174-75 (alteration in original) (quoting Restatement (Second) of Conts. § 241 (Am. L. Inst. 1981)).]

While these factors were not directly addressed by the parties or the trial court, we nevertheless agree with the judge's determination defendant did not materially breach the arbitration agreement. Given that plaintiff filed the Law Division complaint only two days after receipt of the notice from AAA, there does not appear to be any deprivation or harm to plaintiff under the first three factors. And although the record before us does not confirm defendant was able to cure its deficiencies with AAA within fourteen days, defendant was willing to do so in good faith, which militates against finding a material breach. Thus, we discern no error in the court's order enforcing the arbitration agreement.

Plaintiff also contends defendant waived its right to arbitrate for four reasons: defendant (1) made plaintiff file for arbitration even though defendant knew the AAA would not hear the case; (2) did not respond to the arbitration demand or challenge the AAA's decision permitting plaintiff to file suit in lieu of arbitration; (3) never attempted to file for arbitration or offer to advance plaintiff's filing fees before plaintiff filed suit; and (4) waited to raise arbitrability until after plaintiff filed suit, incurring fees and costs, and wasting

trial court resources. Plaintiff also argues once he "filed suit per AAA's directive, defendant waived any right to demand arbitration." We disagree.

A waiver "is the intentional relinquishment or abandonment of a known right." Morgan v. Sundance, Inc., 596 U.S. 411, 417 (2022) (quoting United States v. Olano, 507 U.S. 725, 733 (1993)); Knorr v. Smeal, 178 N.J. 169, 177 (2003) ("Waiver is the voluntary and intentional relinquishment of a known right."). To have an effective waiver, "a party [must] have full knowledge of his legal rights and intent to surrender those rights." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014) (citing Knorr, 178 N.J. at 177). The intent to waive a right does not need to be stated expressly so long as "the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference," but the right must be waived "clearly, unequivocally, and decisively." Knorr, 178 N.J. at 177.

"An agreement to arbitrate a dispute 'can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum.'" Cole, 215 N.J. at 276 (quoting Spaeth v. Srinvasan, 403 N.J. Super. 508, 514 (App. Div. 2008)). As in any case of waiver, the circumstances must clearly show that the party implicitly waiving that right "knew of the right and then abandoned it, either by design or indifference." Id. at 277 (quoting Knorr,

10

178 N.J. at 177).  Courts assess conduct using a totality-of-the-circumstances test that is fact-sensitive and examines the party's conduct during litigation.  Id. at 280.  Courts examine the following Cole factors to determine whether a party has waived arbitration:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.
>
> [Id. at 280-81.]

While the Cole factors were not directly addressed by the parties or the trial court, we nevertheless agree with the court's determination defendant did not waive its right to arbitrate.  Although defendant caused a delay in engaging in arbitration, nothing in the record indicates the delay was a litigation strategy or that it prejudiced plaintiff.  Other than defendant's motion to dismiss, no motions were filed nor was discovery exchanged.  Two days after the AAA advisement, plaintiff filed suit and defendant promptly moved to dismiss in

A-2796-23

favor of arbitration. On this record, we discern no error in the trial court's determination defendant did not waive its right to arbitrate.

For the first time on appeal, plaintiff argues defendant should have been estopped from claiming a right to enforce the arbitration agreement. We decline to consider an issue not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Neither circumstance is present in this matter.

Lastly, we address the dismissal of plaintiff's complaint without prejudice. The complaint should not have been dismissed. Instead, under the FAA, the case should have been stayed "pending arbitration of those claims 'in accordance with the terms of the agreement.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 3); see also Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 567 (App. Div. 2022). Accordingly, we are constrained to reverse the dismissal and remand to the trial court to enter an order staying the case until arbitration is completed.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2796-23